**In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR THE PROPOSED INITIATED CONSTITUTIONAL AMENDMENT "1996–3" ADOPTED ON APRIL 3, 1996, AND MOTION FOR REHEARING DENIED ON APRIL 17, 1996.**

**Vickie ARMSTRONG, Petitioner,**

**v.**

**Neil O'TOOLE, Marshall Fogel, and Roman Garcia, Respondents,**

**and**

**Carol Poole, Rebecca Lennahan, and Richard Westfall, Title Setting Board, Respondents.**

No. 96SA153.

Supreme Court of Colorado, En Banc.

June 10, 1996.

Berry & Singer, John Berry, Denver, for Petitioner.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Respondent Title Setting Board.

PER CURIAM.

The petitioner, a registered elector of Colorado, appeals the action of the Title Setting Board (the "Board"), in setting a title, ballot title and submission clause, and summary ("titles and summary") for a proposed constitutional amendment designated "1996–3." The petitioner's sole objection is that the Board lacked jurisdiction to set the titles and summary because the proponents of the proposed initiative (the "Initiative" or measure "1996–3") failed to highlight or otherwise indicate all of the changes made to the amended original draft of the Initiative as required by section 1–40–105(4), 1B C.R.S. (1995 Supp.). We have jurisdiction over this appeal under section 1–40–107(2), 1B C.R.S. (1995 Supp.), and we now approve the action of the Board.

I.

On or about January 29, 1996, the directors of the legislative counsel and the office of legislative legal services held a comment hearing on the proposed Initiative. § 1–40–105(1), 1B C.R.S. (1995 Supp.). On March 20, 1996, the proponents submitted proposed measure 1996–3 to the secretary of state. § 1–40–105(4), 1B C.R.S. (1995 Supp.).[1]

In the submission to the secretary of state, the proponents highlighted some, but not all, of the textual changes made following the last meeting of the directors. As the Board asserts, "[t]he changes that were not highlighted were technical or grammatical, but not substantive." The original measure provided as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING SUITS AGAINST NON–GOVERNMENTAL EMPLOYERS WHO KNOWINGLY, RECKLESSLY, OR THROUGH GROSS NEGLIGENCE, MAINTAIN AN UNSAFE WORK ENVIRONMENT, AND, IN CONNECTION THEREWITH, PROVIDE THAT SUCH EMPLOYER SHALL NOT BE IMMUNE FROM SUIT BY A WORKER WHO IS INJURED OR DIES AS A RESULT OF THAT UNSAFE WORK ENVIRONMENT AND REQUIRING THAT DAMAGES AND LOSSES RECOVERED IN SUCH SUITS BE REDUCED BY BENEFITS PAID UNDER THE "WORKERS' COMPENSATION ACT OF COLORADO?"

The final proposed version submitted to the secretary of state provided:

BE IT ENACTED BY THE PEOPLE OF THE STATE OF COLORADO THAT THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO PROVIDE THAT ANY NON–GOVERN-

---

**1.** Section 1–40–105(4), 1B C.R.S. (1995 Supp.), provides:

(4) After the conference provided in subsections (1) and (2) of this section, a copy of the original typewritten draft submitted to the directors of the legislative council and the office of legislative legal services, *a copy of the amended draft with changes highlighted or otherwise indicated, if any amendments were made following the last conference conducted pursu-* ant to subsections (1) and (2) of this section, and an original final draft which gives the final language for printing shall be submitted to the secretary of state without any title, submission clause, summary, or ballot title providing the designation by which the voters shall express their choice for or against the proposed law or constitutional amendment.
(Emphasis added.)

MENTAL EMPLOYER WHO KNOW-INGLY, RECKLESSLY, OR THROUGH GROSS NEGLIGENCE, MAINTAINS AN UNSAFE WORK ENVIRONMENT, SHALL NOT BE IMMUNE FROM SUIT BY A WORKER WHO IS INJURED OR DIES AS A RESULT OF THAT UN-SAFE WORK ENVIRONMENT AND THAT DAMAGES AND LOSSES RE-COVERED IN SUCH SUITS BE RE-DUCED BY BENEFITS PAID UNDER THE "WORKERS' COMPENSATION ACT OF COLORADO."

■ The petitioner asserts that when the proponents submitted the original version of the measure, the revision with interlineation, and the final version of the measure to the secretary of state, as required by section 1–40–105(4), they failed to highlight or other-wise indicate all of the differences between the original and final version of the measure in the revision with interlineation. The por-tions of the revision that *were* highlighted were the first few lines through the word "provide" in the final version above. The petitioner alleges that the failure to indicate all of the changes divested the Board of jurisdiction to set the titles and summary. We disagree.

■ The standard of compliance in a case involving an initiative is that of "sub-stantial compliance." As we said in *Loonan v. Woodley,* 882 P.2d 1380 (Colo.1994):

The right of initiative and referendum, like the right to vote, is a fundamental right under the Colorado Constitution. Likewise both the right to vote and right of initiative have in common the guarantee of participation in the political process. In light of the nature and seriousness of these rights, we have held that constitutional and statutory provisions governing the initia-tive process should be "liberally construed" so that "the constitutional right reserved to the people 'may be facilitated and not hampered by either technical statutory provisions or technical construction there-of, further than is necessary to fairly guard against fraud and mistake in the exercise

by the people of this constitutional right.'" *Montero v. Meyer,* 795 P.2d 242, 245 (Colo. 1990)....

In the voting rights context we have held that the rule of "substantial compli-ance" provides the appropriate level of statutory compliance to "facilitate and se-cure, rather than subvert or impede, the right to vote." [*Meyer v.*] *Lamm,* 846 P.2d [862,] 875 [ (Colo.1993) ].... Given the similar nature of the right to vote and the right of initiative and referendum, and the common statutory goal of inhibiting fraud and mistake in the process of exercising these rights, we now hold that substantial compliance is the appropriate standard to apply in the context of the right to initia-tive and referendum.

*Loonan,* 882 P.2d at 1383–84 (citations and footnote omitted). Under the analysis out-lined in *Loonan,* we will consider the follow-ing nonexclusive list of factors in determining whether the proponents have substantially complied with section 1–40–105(4): (1) the extent of the proponents' non-compliance, that is, whether the proponents systematical-ly disregarded the statutory requirements or whether their divergence was an isolated in-stance; (2) the purpose of the statutory pro-vision and whether that purpose is substan-tially achieved despite the non-compliance; and (3) whether it can reasonably be inferred that the proponents made a good faith effort to comply or whether the non-compliance is more properly viewed as an attempt to mis-lead the electorate. *See Loonan,* 882 P.2d at 1384.

Comparing the original version of the mea-sure with the final version, and with the proponents' revisions with interlineation, we have little difficulty in concluding, as did the Board, that the proponents substantially complied with the requirements of section 1–40–105(4). As the Board points out, any differences between the two versions that were not highlighted by the proponents in their submission to the secretary of state were technical and grammatical, and were not of the kind from which it could be in-ferred that the proponents intended to mis-lead anyone.

## II.

The action of the Board in setting the titles and summary of the proposed Initiative is therefore approved.